**Exhibit D**

<u>AMENDED AND RESTATED</u>
<u>DISPOSAL WELL SERVICES AGREEMENT</u>

THIS AMENDED AND RESTATED DISPOSAL WELL SERVICES AGREEMENT (this "Restated Agreement"), entered into and made effective as of the 1st day of July, 2014 (the "Effective Date") by and between Mesa Oil Services, LLC, a Delaware limited liability company, whose address is 1600 Broadway, Suite 1330, Denver, CO 80202 ("Operator"), and Emerald Oil, Inc., a Montana corporation, whose address is 1600 Broadway, Suite 1360, Denver, CO 80202 ("Customer"). Operator and Customer are sometimes referred to herein individually as a "Party" or collectively as the "Parties".

## RECITALS

WHEREAS, Operator owns and operates a salt water disposal well (API Number 3305390307 and North Dakota Industrial Commission ("NDIC") Well File No. 90307) located in Section 30, Township 149 North, Range 101 West, McKenzie County, North Dakota (the "Spackler Well"), and also owns and operates a salt water disposal well (API Number 3305300905 and NDIC Well File No. 7041) located in Section 4, Township 149 North, Range 102 West, in McKenzie County, North Dakota (the Sanders Well, and collectively with the Spackler Well together with any other salt water disposal wells hereafter operated by Operator and/or any other salt water disposal systems in which Operator arranges for connection to and disposal in, collectively the "SWD Wells").

WHEREAS, Operator and Customer previously entered into that certain Disposal Well Services Agreement dated effective July 30, 2012 (the "Original Disposal Agreement") to provide for the terms on which Operator will make available the Sanders Well and Spackler Well and the terms and conditions for the disposal of saltwater and hydraulic fracturing wastewater produced during oil and gas well operations ("Saltwater") in the Sanders Well and Spackler Well.

WHEREAS, Operator and Customer now desire to enter into this Restated Agreement in order to amend and restate the Original Disposal Agreement in its entirety.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged by both Parties, Operator and Customer agree as follows:

1.    <u>Operations</u>.    Operator is the owner and operator of the SWD Wells or has otherwise arranged for the delivery and disposal of Saltwater in the SWD Wells. Operator shall conduct, direct and have full control of all operations regarding the SWD Wells for which it is operator, including the injection and disposal of all Saltwater delivered to the SWD Wells by Customer.

2.    <u>Saltwater Delivery and Disposal Terms and Fees.</u>

(a)    The term of this Agreement shall commence as of the Effective Date and shall remain in full force and effect for a primary term of ten (10) years ("Primary Term") and shall continue year to year thereafter until terminated by either Party ("Extended Term") by providing written notice of termination at least ninety (90) days prior to the expiration of the Primary Term, or any subsequent annual expiration date.  Customer agrees to deliver to the SWD Wells for Saltwater delivered prior to the Initial System In-Service Date (as such term is defined in the Water Gathering Agreement), or to the Receipt Points of Operator's water gathering facilities (the "Water Gathering System") pursuant to the Water Gathering Agreement following the Initial System In-Service Date, and Operator agrees to dispose of all Saltwater generated from any and all of Customer's well operations located within Townships 149N/102W, 149N/103W, 148N/103W, 148/102W in McKenzie County, North Dakota (the "Applicable Area"), up to the barrel equivalent of the operational capacity of the SWD Wells that are in commercial operation and that Operator has the right to dispose of Saltwater in at such time.

(b)    As of the Effective Date, the disposal cost for all Customer's Saltwater disposed into the SWD Wells (the applicable, "Disposal Cost") shall be $1.50 per barrel. Following the Initial System In-Service Date, Customer agrees that it shall be responsible for all costs and charges associated with delivery and transportation of the Saltwater to the SWD Wells pursuant to the Water Gathering Agreement.  Prior to the Initial System In-Service Date, Customer agrees that it shall be responsible for all costs and charges associated with delivery and transportation of the Saltwater to the SWD Wells by truck hauler.  Operator agrees that it shall be responsible for all costs associated with operating the SWD Wells, including utilities and taxes.

(c)    Subject to any Operator Force Majeure Event, Operator agrees to dispose of all Saltwater actually delivered by Customer to the SWD Wells or into the Receipt Points of the Water Gathering System pursuant to the Water Gathering Agreement during regular business hours of Operator, which are 24 hours per day, 7 days per week, or at such times as Customer and Operator shall agree from time to time (the "Applicable Delivery Times").

(d)    For purposes of this Restated Agreement, an Operator Force Majeure Event shall mean any explosion, fire, flood, blizzard, act of God or other sudden emergency, whether of the same or different nature, affecting the SWD Wells or the ability to operate the SWD Wells.  Operator agrees to use commercially reasonable efforts to provide Customer with notice of any Operator Force Majeure Event as promptly as possible, and in any event within 24 hours of the occurrence of such Operator Force Majeure Event. Operator shall release Customer from its obligations under Section 2(a) for the period of time that a Force Majeure event prevents Operator from accepting Customer's Saltwater deliveries and Customer may contract for an alternative Saltwater disposal service until Operator is able to accept Customer's Saltwater for disposal at the SWD Wells.

(e)    If for any reason Operator is unable to accept all, or any portion thereof, of Customer's produced Saltwater for disposal at the SWD Wells, Customer shall be released from its obligations under Section 2(a) of this Restated Agreement and be free to

2

secure and bear the costs of alternative Saltwater disposal arrangements with third parties for the period and for the portion of Saltwater that the Operator is unable to accept of such Customer's Saltwater, including such reasonable period that may be required to secure alternative Saltwater disposal through third parties on reasonable commercial terms.

(f)     To the extent possible, Operator shall notify Customer not less than thirty (30) days in advance of any planned SWD Well shutdown, stating the expected duration and dates of the shutdown.  Upon such notice Customer shall be released from its obligations under Section 2(a) of this Restated Agreement for any portion of Saltwater to be delivered to such shutdown SWD Well and be free to secure and bear the costs of alternative Saltwater disposal arrangements with third parties for the period that the Operator is unable to accept such Customer's Saltwater, including such reasonable period that may be required to secure alternative Saltwater disposal through third parties on reasonable commercial terms.  Subject to Force Majeure or other operational necessity to operate and maintain the SWD Wells in accordance with industry standards and in compliance with applicable laws, Operator shall not shutdown more than one SWD Well at the same time.

(g)     Operator shall use commercially reasonable efforts, at its sole cost and expense, to accept all of Customer's Saltwater, including but not limited to, and at its sole discretion, acquiring additional SWD Wells and/or contracting with third party operators of saltwater disposal facility for disposal services.  If Operator is unable to accept all, or any portion thereof, of Customer's Saltwater for disposal for more than thirty (30) total days during any rolling twelve (12) month time period for reasons other than Force Majeure or planned SWD shutdowns, Customer may elect, in its sole discretion, to terminate this Restated Agreement on thirty (30) days prior written notice for any portion of Saltwater which Operator is unable to accept at the SWD Wells, unless Operator agrees to compensate Customer for the increased trucking costs and disposal fees incurred by Customer to dispose of Customer's Saltwater into a third party saltwater disposal facility.

3.     Customer Covenants.  Customer hereby covenants and agrees as follows:

(a)     all Saltwater delivered to the SWD Wells either by truck or delivery to the Receipt Points under the Water Gathering Agreement shall meet the more restrictive of the water quality specifications set forth on Exhibit "A" (attached hereto and incorporated herein) or the water quality specifications of any of the SWD Wells operated by third parties in which Operator has made arrangements to dispose of Customer's Saltwater. Additionally, Operator reserves the right to revise the water quality specifications upon thirty (30) days advance written notice.

(b)     Customer shall ensure that all Saltwater delivered to the SWD Wells is either:

1)     delivered into the Receipt Points of the Water Gathering System pursuant to the Water Gathering Agreement; or

3

2)      for any Saltwater delivered prior to the Initial System In-Service Date or otherwise released from the obligations of the Water Gathering Agreement, delivered by truck using haulers that (i) hold a Class-A CDL license and endorsements, (ii) meet all federal and North Dakota Department of Transportation requirements, and (iii) meet any and all other reasonably necessary qualifications per industry standards.

(c)      For any deliveries by truck, Customer shall provide Operator with a delivery report detailing the barrel equivalent of all Saltwater delivered, together with such other information as Operator shall request from time to time.

(d)      Customer shall prepare and submit all forms, reports and other filings required to be filed by Customer with the NDIC or any other governmental agency in connection with the production, transportation and delivery of all Saltwater delivered to the SWD Wells.

(e)      all Saltwater delivered to Operator will become the property and under the control of Operator upon entry onto a SWD Well facility premises if delivered by truck or upon delivery into the Receipt Points of Water Gathering System pursuant to the Water Gathering Agreement.

4.      Operator Covenants. Operator hereby covenants and agrees as follows:

(a)      Operator shall dispose of all Saltwater delivered by Customer to the SWD Wells during an Applicable Delivery Time and shall operate the SWD Wells in accordance with good operating practice for saltwater disposal wells and all applicable laws, including without limitation, all environmental laws;

(b)      Operator shall obtain and maintain, in all material respects, the required licenses, permits and authorizations necessary to operate the SWD Wells in accordance with the laws of the State of North Dakota, and shall prepare and submit all forms, reports and other filings required to be filed by Operator with the NDIC or any other governmental agency in connection with the operation of the SWD Wells; and

(c)      Operator shall provide Customer with a reconciliation of the volumes of Saltwater delivered by Customer to the SWD Wells on a monthly basis.

5.      Billing and Payment.  Operator shall invoice Customer on a monthly basis by delivery of a written invoice to Customer's notice address set forth below.  Customer agrees to make payment in full of each invoice no later than fifteen (15) days after receipt thereof.  Unless otherwise agreed by the Parties, Customer agrees to make all payments by means of wire transfer.  For deliveries by truck haulers pursuant to this Restated Agreement, Operator shall list each individual truck volume with associated unique ticket number or daily meter volume on the monthly invoice.  Should a discrepancy become apparent or a dispute arise over the sum shown as due on an invoice, Customer shall advise Operator thereof, and:

(a)      the Parties shall take reasonable endeavors to resolve the dispute and agree upon the correct invoice amount,

4

(b)     if the Parties so resolve the dispute in an expeditious manner, Operator shall, if necessary, re-submit a correctly-prepared invoice, and

(c)     where mutual agreement cannot expeditiously resolve the dispute, Customer shall continue to pay Operator all undisputed amounts according to this Restated Agreement, and the Parties shall seek their respective recourse according to Section 10.

Customer, at its sole cost and expense, upon reasonable notice in writing to Operator, shall have the right to audit the books, accounts and records of Operator to the extent necessary to verify the accuracy of any statement, charge or demand made under or pursuant to any of the provisions of this Agreement for two (2) years commencing at the end of the calendar year in which the applicable services were performed hereunder.

6.     Liability.

(a)     Operator shall not be liable to Customer for losses sustained or liabilities incurred in connection with operation of the SWD Wells, except as may result from the gross negligence or willful misconduct of Operator.  Customer agrees to indemnify Operator for any and all damages, claims, losses, liabilities, suits, proceedings, causes or action or other similar events (collectively, "Losses") incurred by Operator as a result of a breach of the covenants set forth in Section 3(a), (b), (c), (d), or (e).

(b)     Customer shall not be liable to Operator for losses sustained or liabilities incurred in connection with operation of the SWD Wells, except as may result from the gross negligence or willful misconduct of Customer, or its hauler, if other than Operator. Operator agrees to indemnify Customer for any Losses incurred by Customer as a result of a breach of the covenants set forth in Section 4(a), (b), or (c).

7.     Independent Contractor.  Operator shall be an independent contractor and not the partner, joint venturer, agent or employee of Customer.

8.     Force Majeure.  Neither Operator nor Customer shall be in breach of this Restated Agreement or incur any liability to one another or any other person if it fails to perform an obligation under this Restated Agreement due to an event of an Operator Force Majeure Event or a Customer Force Majeure Event, as applicable.

9.     Assignment.  Neither Party to this Restated Agreement may assign, sell, dispose of, encumber, grant a security interest in or otherwise transfer their respective rights or obligations under this Restated Agreement without the prior written consent of the other Party, such consent not to be unreasonably withheld or delayed.

10.     Redress.

(a)     No aggrieved Party may pursue a claim under this Restated Agreement before affording the breaching Party (i) notice thereof and (ii) a ten-day opportunity to cure.

5

(b)    Upon an uncured breach of this Restated Agreement, the aggrieved Party may seek all redress at law (including an award of damages).

(c)    The Parties shall adjudicate this Restated Agreement in the City and County of Denver, Colorado, under the auspices, and according to the rules, of the Commercial Division of the American Arbitration Association.  A single arbitrator mutually selected by the Parties (or, absent prompt agreement, by the methods of the Commercial Division) shall hear the claim.  The ruling of the arbitrator shall apply this Restated Agreement as written and render a final disposition of the matter.  Each Party may enforce the arbitrator's ruling in any court with jurisdiction.

(d)    This Restated Agreement permits a Party's enforcement of the duties owing it hereunder notwithstanding its prior failure to require performance or timely performance.

(e)    If any term of this Restated Agreement (or if its application to any situation) proves unenforceable, then the remainder of this Restated Agreement (or the term's application to any other situation) shall survive and allow enforcement to the greatest lawful extent.

11.    <u>Right to Dispose of Saltwater from Third Parties</u>. Operator may contract and do business with other oil and gas operators, developers, producers and any other third parties.

12.    <u>Priority of Service.</u> Saltwater delivered to the SWD Wells or Operator's equivalent facilities by Customer up to the barrel equivalent of the operational capacity of the SWD Wells shall be accepted by Operator in priority over Saltwater delivered by third parties and Operator shall dedicate sufficient tank capacity at all times to accept Salt Water delivered by Customer.

13.    <u>Condition Subsequent</u>. Operator and Customer agree to execute that certain Water Dedication and Gathering Agreement by and between Operator and Customer (the "Water Gathering Agreement") contemporaneously with this Restated Agreement, as a condition subsequent to the obligations under this Restated Agreement and upon execution to the extent of any conflict between the terms of this Restated Agreement and the terms of the Water Gathering Agreement, the terms of the Water Gathering Agreement shall control to the extent of the conflict.  Notwithstanding any provision of this Restated Agreement, in any event if the Water Gathering Agreement or this Restated Agreement is not so executed by the Parties, this Restated Agreement shall be rendered null and void and the Parties' respective obligations under the Original Disposal Agreement shall remain in full force and effect.

14.    <u>Governing Law</u>. The validity and interpretation of this Restated Agreement and the legal obligations of the Parties to it shall be governed by the laws of the State of North Dakota without reference to that State's principles of conflicts of law.

15.    <u>Notices</u>.  All communications required or permitted under this Restated Agreement shall be in writing and may be sent by facsimile or email.  Such communication shall be deemed made when actually received, or if mailed by registered or certified mail, postage prepaid, addressed as set forth below, shall be deemed made three days after such mailing.

Emails will be deemed to be received when recorded as being successfully sent on the sender's system, with no subsequent return message indicating the message may not have been delivered. Either Operator or Customer may, by written notice to the other, change the address for mailing such notices:

Notices to Operator:  Mesa Oil Services, LLC
1600 Broadway, Suite 1330
Denver, CO 80202
Attention: Heath Norman
Email: thomas@mesaoilservices.com;

Notices to Customer:  Emerald Oil, Inc.
1600 Broadway, Suite 1360
Denver, CO 80202
Attention: David Veltri
Email: davidv@emeraldoil.com

16.  Entire Agreement. This Restated Agreement together with the Water Gathering Agreement constitute the entire agreement between Operator and Customer and subject to Section 13 above supersede all prior contracts, negotiations, representations, or agreements, either oral or written, related to the subject matter of this Restated Agreement and the Water Gathering Agreement.

17.  Binding Effect. This Restated Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, and their successors and assigns. The Parties hereto agree that there are no intended third party beneficiaries of this Restated Agreement.

18.  Severability; Survivorship; Headings; Counterparts. If any provision or portion of this Restated Agreement shall be adjudged invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, that provision or portion of this Restated Agreement shall be deemed omitted and the remaining provisions and portions shall remain in full force and effect. The provisions of this Restated Agreement that by their nature continue shall survive any expiration, cancellation or termination of this Restated Agreement. The headings in this Restated Agreement are for ease of reference only and shall not be used to construe or interpret the provisions of this Restated Agreement. This Restated Agreement may be executed in any number of counterparts, all of which, taken together, shall constitute the same agreement.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, Operator and Customer have executed this Restated Agreement as of the date first written above.

OPERATOR:

MESA OIL SERVICES, LLC

By: _____
Name: Thomas Heath Norman
Title: Chief Executive Officer

CUSTOMER:
EMERALD OIL, INC.

By: _____
Name: McAndrew Rudisill
Title: Chief Executive Officer

EMERALD OIL, INC.

By: _____
Name: David Veltri
Title: Chief Operating Officer

8

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF THAT CERTAIN
<u>AMENDED AND RESTATED</u>
<u>DISPOSAL WELL SERVICES AGREEMENT</u>
by and between
Mesa Oil Services, LLC, as "Operator" and
Emerald Oil, Inc., as "Customer"

<u>WATER QUALITY SPECIFICATIONS</u>

- Must be free of gels, solids or fracing materials
- Must pass a 200 micron filter as verified by Operator's 200 micron filter
- The oxygen content must be less than 0.05%
- Must be free from $H_2S$

If Customer's Saltwater clogs Operator's filters at any SWD Well, the SWD Well will be closed until Customer can substantiate that the quality of the Saltwater meets the above described specification and Customer shall bear all Operator's costs and consequences arising from such closure.

9