**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: EMERALD OIL, INC., *et al.*,[1] <br><br> Debtors. | ) Chapter 11 <br> ) Case No. 16-10704 (KG) <br> ) (Jointly Administered) |
| EMERALD OIL, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAKOTA MIDSTREAM, LLC; DAKOTA ENERGY CONNECTION, LLC; and DAKOTA FLUID SOLUTIONS, LLC f/k/a MESA OIL SERVICES, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Adversary Proceeding No. 16-50998(KG) <br> ) <br> ) **Ref. Dkt. Nos. 6, 7, and 30** <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF TIMOTHY L. REYNOLDS IN SUPPORT OF DEFENDANTS'**
**ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT**

I, Timothy L. Reynolds, declare as follows under penalty of perjury under 28 U.S.C. § 1746:

1.     I am authorized to submit this declaration (the "Declaration") on behalf of Dakota Midstream, LLC, Dakota Energy Connection, LLC and Dakota Fluid Solutions, LLC f/k/a Mesa Oil Services, LLC (collectively, the "Defendants" or "Dakota") in support of the *Defendants' Answering Brief in Opposition to Plaintiffs' Motion for Summary Judgment* (the "Opposition"),[2] to which this Declaration is annexed.

2.     I am the founding partner and co-Chief Executive Officer of Dakota Midstream, LLC. I am a graduate of the University of North Carolina at Chapel Hill (2001) and the Stanford University Graduate School of Business (2008). I served in the White House in the Office of the Chief Of Staff and in the National Economic Council from 2002 through 2006. Additionally, I

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Emerald Oil, Inc. (9000); Emerald DB, LLC (2933); Emerald NWB, LLC (7528); Emerald WB LLC (8929); and EOX Marketing, LLC (4887).  The location of the Debtors' service address is: 200 Columbine Street, Suite 500, Denver, Colorado  80206.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Opposition.

1

worked for Highstar Capital, an infrastructure-fund manager focusing on midstream energy investments from 2008 to 2014. Thereafter, I founded Dakota with Heath Norman.

3. Unless otherwise noted, the statements in this Declaration are based on: (a) my personal knowledge; (b) my review of relevant documents, including documents produced by the above-captioned plaintiffs (collectively, the "Plaintiffs" or the "Debtors"); (c) information supplied to me by other professionals retained by Dakota; and (d) my views, based upon my experience in the oil and gas industry. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## DECLARATION

4. Dakota is a midstream company, and pursuant to the Dedication Agreements it built, operates, and maintains co-located oil, gas, and saltwater gathering and saltwater disposal well systems and facilities located in McKenzie County, North Dakota. These systems run around the clock, 365 days per year, for the benefit of the Debtors' Working Interests, utilizing a combined 60+ miles of oil, gas, and water pipelines; disposal wells, and related facilities such as pumps, tanks, and compressors.

5. Pipelines serve as the principal commercial method of gathering gas for further processing and treatment. Dakota's pipelines provide the first and most critical link of the transport process of Emerald's gas; without Dakota's gathering, Emerald would not be able to meet its existing downstream commitments for the processing of gas.

6. Regardless of the particular form of dedication, the understanding within the oil and gas industry is that once a producer has dedicated its production within a defined area such producer is precluded from using alternative midstream providers during the term of the dedication commitment.

7.      Dakota's gas gathering system allows Emerald to meet or exceed the NDIC gas capture goals for the foreseeable future.

8.      As of the beginning of 2014, Emerald did not have sufficient access to gathering systems for oil and saltwater and was trucking all of its oil and saltwater production.  It had no viable means of gathering its associated gas production and had no choice but to dispose of the gas by flaring, which was obviously a terrible waste of resources and, it is my understanding, put Emerald in noncompliance with NDIC regulations.

9.      The principals of Emerald and Dakota began discussions about construction of comprehensive oil and gas gathering systems in the first half of 2014.  These discussions ultimately led to the formation of Dakota and the execution, in July 2014, of the key dedication agreements for crude oil, gas, and saltwater (as amended in May 2015) that are at issue in this case, specifically:

> ***Crude Oil Dedication Agreement.***  Emerald Oil, Inc. and Dakota Midstream, LLC entered into that certain Crude Oil Dedication & Throughput Commitment Transportation Agreement dated effective July 1, 2014, as amended by that certain Amendment No. 1 dated effective November 19, 2014 (the "Original COD Agreement"), and Dakota Midstream, LLC assigned its interest under the Original Agreement to its affiliate, Dakota Energy Connection, LLC effective March 23, 2015.  On May 26, 2015, Emerald Oil, Inc., Emerald WB, LLC, Dakota Midstream, LLC and Dakota Energy Connection, LLC executed that certain Amended and Restated Crude Oil Dedication & Throughput Commitment Transportation Agreement ("Amended and Restated Crude Oil Dedication Agreement").  The Original COD Agreement, as amended by the November 19, 2014 Amendment, and the Amended and Restated Crude Oil Dedication Agreement shall be referred to as the "Crude Oil Dedication Agreement."
>
> ***Gas Dedication Agreement.***  Emerald Oil, Inc. and Dakota Midstream, LLC entered into that certain Gas Dedication and Gathering Agreement dated effective July 1, 2014, as amended by that certain Amendment No. 1 dated effective November 19, 2014 (the "Original GD Agreement").  On May 26, 2015, Emerald Oil, Inc., Emerald WB, LLC, and Dakota Midstream, LLC executed that certain Amended and Restated Gas Gathering and Dedication Agreement ("Amended and Restated Gas Dedication Agreement").  The Original GD Agreement, as amended by

the November 19, 2014 Amendment, and the Amended Gas Dedication Agreement shall be referred to as the "Gas Dedication Agreement."

***Water Dedication Agreement.***  Emerald Oil, Inc. and Mesa Oil Services, LLC entered into that certain Disposal Well Services Agreement dated December 14, 2012, for the disposal of Debtors' water in the Sanders and Spackler Salt Water Disposal Wells (as amended July 1, 2014, the "Original SWD Agreement").  On May 26, 2015, Emerald Oil, Inc., Emerald WB, LLC, and Dakota Fluid Solutions, LLC, f/k/a Mesa Oil Services, LLC executed that certain Amended and Restated Water Dedication and Gathering Agreement ("Amended and Restated Water Dedication Agreement").  The Original SWD Agreement and the Amended and Restated Water Dedication Agreement shall be referred to as the "Water Dedication Agreement".

10.    In reliance on the Dedication Agreements, Dakota built infrastructure co-located, configured, and designed specifically to serve Emerald's current and future wells in the Area of Dedication, and the required operational capacity pursuant to the Dedication Agreements.  As a critical component of the consideration supporting Dakota's substantial investment in this infrastructure, Dakota and Emerald agreed that Emerald's "dedication" of the production from its Working Interests as provided therein was a "covenant running with the land" (Ded. Agmts. § 1.2), which was to be "binding upon the Parties, and their respective successors and assigns including any purchaser of [Emerald's Working Interests] that are dedicated under this Agreement . . ." (*Id.* § 8.1.) A Memorandum of Dedication for each Dedication Agreement was properly recorded in the McKenzie County Recorder's Office, as required of all real property conveyances under North Dakota law.

11.    Emerald also caused the assignment to Dakota of 33 separately recorded rights of way and/or easements, certain of which are with the mineral estate owners who lease their oil and gas interests to Emerald for exploration and development.  Each assignment is in the form attached as Exhibit G to the Dedication Agreements, is incorporated by reference into the Dedication Agreements themselves, and provides that the "burdens, terms, covenants, reservations, restrictions

and conditions [contained in the assignment] are covenants running with the land and with each subsequent transfer or assignment of any interest acquired or conveyed by Assignor and/or Assignee hereunder." (Assign. ¶ H.)  These assignments were also duly recorded in the McKenzie County Recorder's Office, as required of all real property conveyances under North Dakota law.

12.    Paragraph 6 of the General Terms and Conditions of the Crude Oil Dedication Agreement acknowledges the applicability of regulation of the Crude Oil System by the Federal Energy Regulatory Commission ("FERC") under the Interstate Commerce Act, 49 U.S.C. App. (1988) (the "ICA").[3]  As contemplated by the Crude Oil Dedication Agreement, Dakota filed a tariff with FERC, which was accepted and is currently effective.  The tariff governs the transportation of oil by Dakota and provides the rates to be charged Emerald (including committed service rates, uncommitted service rates and deficiency rates for failure to meet minimum volume commitments) and remedies for default (including the requirement of providing adequate financial assurance, notice requirements, and the procedures for suspending delivery of oil and ultimate sale of oil in the event of non-payment).  The filed tariff enjoys the force of law.  Thus, it prohibits Dakota from charging more than the tariff rates for the transportation of Emerald's crude oil.  But by the same token, it prevents Dakota from being forced to transport Emerald's crude oil for less than the tariff rates.

13.    The service provided to Emerald pursuant to the Dedication Agreements is "firm transportation" of its oil and "highest priority" transportation of its gas and saltwater.  Firm transportation service guarantees delivery without interruption (except in extraordinary circumstances) at the customer's primary firm delivery point.  Interruptible transportation services, by contrast, may be suspended, reduced, or not scheduled in accordance with the pipeline's tariff and FERC policy.

---

[3] The ICA was repealed in 1978 but remained in effect for oil pipelines. *See generally* 49 U.S.C. §§ 60101-60503.

14.     Emerald would not have been able to obtain customized gathering from a midstream company, much less priority or firm service, without making a commitment rising to the level of a real property dedication.  As a result of the dedication to Dakota, Emerald was able to redeploy its capital towards development of its Working Interests, achieving compliance with North Dakota law, meeting certain of its obligations under the terms of certain of its leases, minimizing surface disturbance and adverse impacts to the landowners overlying the leasehold interests, and maximizing production and therefore proceeds to all interest owners in the wells connected to the Dakota systems.  All of these benefits inured directly to the benefit of Emerald's Working Interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: September 14, 2016
New York, New York

/s/ Timothy L. Reynolds
Timothy L. Reynolds
Co-CEO
Dakota Midstream, LLC