UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Lead Case No. 16-10704(KG)  Adv. Proc. No. 16-50998(KG)

- - - - - - - - - - - - - - - - - - - - - - -x

In the Matters of:

EMERALD OIL, INC., et al.,

            Debtors.

- - - - - - - - - - - - - - - - - - - - - - -x

EMERALD OIL, INC.,

                  Plaintiff,

            - against -

DAKOTA MIDSTREAM, LLC, et al.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - -x

                  United States Bankruptcy Court

                  824 North Market Street

                  Wilmington, Delaware

                  September 22, 2016

                  9:59 AM


B E F O R E:

HON. KEVIN GROSS

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  GINGER MACE

Telephonic hearing regarding the status of a proposed settlement resolving the Plaintiffs' Motion for Summary Judgment [Adv. Pro. Docket No. 6]

Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts with the Dakota Midstream Parties and (II) Granting Related Relief [Docket No. 362]

Transcribed by:  Penina Wolicki

3

A P P E A R A N C E S :   (TELEPHONICALLY)

PACHULSKI STANG ZIEHL & JONES LLP

        Attorneys for Debtors

BY:   LAURA DAVIS JONES, ESQ.

        COLIN R. ROBINSON, ESQ.

KIRKLAND & ELLIS LLP

        Attorneys for Debtors

BY:   RYAN B. BENNETT, ESQ.

        TRAVIS M. BAYER, ESQ.

        WILLIAM E. ARNAULT, ESQ.

        ANNA G. ROTMAN, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE

        Office of the United States Trustee

BY:   HANNAH M. MCCOLLUM, ESQ.

AKIN GUMP STRAUSS HAUR & FELD LLP

        Attorneys for the Official Creditors' Committee

BY:   SARAH L. SCHULTZ, ESQ.

        DAVID H. BOTTER, ESQ.

WHITEFORD TAYLOR PRESTON LP

     Attorneys for the Official Creditors' Committee

BY:   CHRISTOPHER M. SAMIS, ESQ.


RICHARDS, LAYTON & FINGER, PA

     Attorneys for Cortland Capital Market Services

BY:   ZACHARY SHAPIRO, ESQ.

     MARK D. COLLINS, ESQ.


WEIL GOTSHAL & MANGES LLP

     Attorneys for Cortland Capital Market Services

BY:   AMY M. ODEN, ESQ.

     JOSEPH H. SMOLINSKY, ESQ.


WOMBLE CARLYLE SANDRIDGE & RICE, LLP

     Attorneys for Wells Fargo Bank, NA

BY:   ERICKA JOHNSON, ESQ.


YOUNG CONAWAY STARGATT & TAYLOR, LLP

     Attorneys for Dakota Midstream LLC

BY:   M. BLAKE CLEARY, ESQ.

MORRIS JAMES LLP

     Attorneys for Cache Trucking

BY:   CARL N. KUNZ, III, ESQ.


MORRIS JAMES LLP

     Attorneys for Jacam Chemicals 20013

BY:   STEPHEN M. MILLER, ESQ.


SHEPPARD MULLIN RICHTER & HAMPTON, LLP

     Attorneys for New Emerald Holdings

BY:   TED A. COHEN, ESQ.


ALSO PRESENT:  (TELEPHONICALLY)

     TIMOTHY L. REYNOLDS, Dakota Midstream

     HEATH NORMAN, Dakota Midstream

P R O C E E D I N G S

THE COURT:  Good morning, everyone.  It's Judge Gross on the telephone, and I was hard at work last night preparing for the hearing tomorrow, when I got the email from Mr. Bennett telling me that there had been an agreement-in-principle. So -- and asking for a teleconference, this morning.  So here I am.  I'm prepared to listen.

Mr. Bennett?  Mr. Cleary, are you on the phone?

MR. CLEARY:  I am, Your Honor.  We had spoken in advance, and I thought Mr. Bennett was going to provide you an update.  I don't know if Joe Smolinsky is on the phone as well. I think he wanted to address the Court as well.  So I was going to defer to them, but I'm happy to walk through and give you an update if they're not on the phone.

THE COURT:  All right.

MR. SMOLINSKY:  Your Honor, this is Joe Smolinsky. I'm on.  We were just finishing up a call with the company, so Mr. Bennett should be dialing in.

THE COURT:  Oh, okay, fine.  I'll be happy to wait for him.

MR. CLEARY:  Thank you, Your Honor.

THE COURT:  Mr. Bennett?  Not yet.

MR. SMOLINSKY:  We'll give him one more minute, Your Honor, and then I'm happy to do this.

THE COURT:  Well, that's fine.  You've all worked very

hard, and I'm prepared to wait.

MR. SMOLINSKY:  Thank you.

COURTCALL OPERATOR:  Mr. Bennett's line is live.

THE COURT:  Oh, thank you.

Mr. Bennett, good morning.  Judge Gross on the phone.

MR. BENNETT:  Good morning.  Thanks for accommodating. I apologize for the late-night email but hopefully it was received as good news.

THE COURT:  Well, I was preparing for the hearing, so it came at a good time.

MR. BENNETT:  We knew that.  That's why we wanted to get it to you, so that you didn't stay up too late for us.

So I believe I have my other colleagues on the phone as well.  But, yeah, we are pleased to announce this agreement-in-principle, that resolves or proposed to resolve, subject to definitive documentation and approval, the various disputes among the parties.  The prior motions that are before (indiscernible).

THE COURT:  Mr. Bennett, you're breaking up on us a little bit.

MR. BENNETT:  Oh, I'm sorry, Judge.

THE COURT:  That's okay.  Let's try again, yes.

MR. BENNETT:  Okay.  And the settlement does propose to resolve the disputes among the parties.  And these are the motions that have been before the Court on a prior occasion

with respect to stored crude and the administrative expense, as well as the two motions pending before the Court now with respect to summary judgment and the rejection of the gathering agreements.

Mr. Smolinsky, on behalf of the pre-petition agent and DIP lenders, is going to just take the Court through a few of the summary terms of that agreement, and I'll yield to Mr. Smolinsky.  Thank you, Judge.

THE COURT:  Thank you, Mr. Bennett.

Mr. Smolinsky, now it's time for you to talk.

MR. SMOLINSKY:  Okay.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. SMOLINSKY:  So, yeah.  So you could imagine that this has been a lengthy groundwork, but we were able to resolve this issue -- these issues much like we resolved our issues with the committee earlier in the case.

So at a high level, we just wanted to give Your Honor an understanding of what's been resolved.

THE COURT:  Yes, because I'm very curious about it.

MR. SMOLINSKY:  So we resolved issues both between the estate and DMS and with respect to the lenders and DMS, which includes how the purchase is going to go forward pursuant to the bidding procedures that were before you.

So under the settlement -- and we did sign a letter of intent last night, so this is not on the back of a cocktail

napkin, but we actually have a document with a roadmap of the documents that we need to feverishly get done before next week. We're expecting to be before Your Honor on the 30th, where we'll have the sale hearing and have to see whether there is an auction, whether there is another third-party bidder.  But at this point, I don't know that anyone's aware of one.  So we're moving ahead with what will be a credit bid by the lenders which will supersede the cash stalking-horse bid that was before Your Honor as the stalking horse.

Under the settlement, the dispute between the estate and DMS with respect to crude storage -- oil storage -- will be resolved with a splitting of the funds that are in that escrow. So that would be resolved.

THE COURT:  Okay.

MR. SMOLINSKY:  The administrative expense motion that resulted in the escrow of funds which currently sits with approximately 2.4 million dollars in the account, will go over to DMS as part of the settlement.  And if we close the sale prior to October 15th, there won't be any additional funds going to DMS, so that's our target.  And we're going to be working to close that sale as quickly as possible.

In exchange for the accommodations that they've made in order to allow the lenders to put in a credit bid with revised terms under the dedication agreements, the estate will be providing two million dollars in cash to DMS, and DMS will

also get an unsecured damage claim of ten million dollars.

The economics under which the dedication agreements will be assumed are basically changes in pricing, changes in the minimum volume commitments, and other than that, there's no change to the relative legal positions of the estate, and now the successor purchaser, NDMS.  So we're not in any way fixing, if you will, the legal positions that were in dispute.  That'll be left, hopefully, for no other day.  We'll be assuming those agreements as they exist with the changed economics.

THE COURT:  Very good.

MR. SMOLINSKY:  And that's, in sum and substance, the arrangements that have been worked out.

For Your Honor's benefit, I'll just make you aware that while we were focusing on trying to reach global peace, the DIP facility was marching along and actually matures today.

THE COURT:  Okay.

MR. SMOLINSKY:  The lenders have not had adequate time to address the situation, but I can advise Your Honor that currently we intend to extend the maturity of that facility at least to the end of the month so we can get all the sale process going.  We've also initiated a dialog with the company with respect to all of the costs associated with getting to the sale closing, and hopefully to a confirmed Chapter 11 liquidating plan thereafter.

AS you could imagine, those numbers are sizeable.  As

you've heard, the company was already under severe liquidity constraints.  And so we will no doubt have to figure out a way to infuse more money into the company, and that may very well be before you -- I think it has to be before you on the 30th. I don't know in what form.  Hopefully not before -- hopefully not before.

THE COURT:  Okay.

MR. SMOLINSKY:  So that's the update on the financing.

THE COURT:  All right.  Well, now, because it's going to be a credit bid, is there an allowance for all administrative expenses and the like?

MR. SMOLINSKY:  Yeah, so we realize that it can't be a hundred percent credit bid.  It's going to have to be a partial cash bid in order to resolve claims that have to be paid that are not assumed by the purchaser.

THE COURT:  Okay.

MR. SMOLINSKY:  And that's what we're working on right now.  So we may form some kind of contingent cash piece that would be paid if necessary to make those payments.

THE COURT:  All right.

MR. BOTTER:  Your Honor, it's David Botter from Akin Gump on behalf of the creditors' committee.  And Your Honor beat me to one of my questions.  The committee is happy to hear about the resolution of these issues, but obviously concerned. Mr. Smolinsky was not involved in the case early on when we and

the U.S. Trustee had gotten an agreement from the lenders that, in fact, this case would proceed to a liquidating plan.  I'm hopeful, given that I know Mr. Smolinsky is an incredibly constructive lawyer, I'm hopeful we won't have disputes about how this case will come to a conclusion.  But the committee has not been involved in these conversations and stands ready to be involved in those conversations.  And obviously we reserve all rights, as we've not yet seen the term sheet for this deal, and it obviously has substantial implications for case-ending issues.

THE COURT:  All right.

MR. SMOLINSKY:  And as soon as I -- as soon as I could peel my clients off the ceiling after seeing the budget, we'll get right down to it.  And the two million dollars that have been put aside for the unsecured creditors are front and center on the proposed budget.

MR. BOTTER:  Joe, I appreciate that.

THE COURT:  All right.  And I know that Mr. Botter will be at the ready to challenge that if necessary.

MR. BOTTER:  I hope not, Your Honor, but I will be, if necessary.

THE COURT:  All right.  Mr. Cleary, how about from you?

MR. CLEARY:  Yeah, thank you, Your Honor.  First of all I wanted to thank you, because I know you've probably

already been working hard to be prepared for Friday's hearing, and there were some issues that we were going to be presenting to the Court.  And so I thank you for that.  I'm sure you're pleased to not have to spend all day with us, so I'm also happy about that.

THE COURT:  And I was able to -- I was able to tell my wife that my weekend might be cleared up.

MR. CLEARY:  I'm sure she was happy.

THE COURT:  Yes.

MR. CLEARY:  I think Mr. Smolinsky has definitely adequately provided Your Honor an overall summary of the terms. Obviously there's a lot of other terms that are in that letter of intent that we've executed, and those are also equally important.  There is one other piece -- I think there's a piece of equity that's flowing to Dakota -- DMS as it has been referred to, in connection with that.  But I don't think we need to get into those particulars at the moment, because I think the way this will be documented is through several orders of the Court, including the sale order which will be monitoring and making sure that these legal issues will be passing through, and there is -- we won't be asking Your Honor to rule on the legal issues with respect to the rejection or the summary judgment.  But they'll be fully preserved for another day, to the extent necessary.

THE COURT:  All right.  Thank you, Mr. Cleary.

Anyone else wish to be heard?

Well, it's good news.  I know how hard you've worked to prepare the case.  I was also working hard to prepare it, but I don't think that I had put in the hours that you all did. So I'm sure that it comes as kind of a bittersweet result, but it sounds like a fair result.  And I will look forward to hearing more and seeing more next week.

UNIDENTIFIED SPEAKER:  Thank you very much, Your Honor.

THE COURT:  All right, everyone.  Well, thank you.  If you need me in the meantime, you know how to reach me.

UNIDENTIFIED SPEAKER:  Yes, sir.

THE COURT:  All right.  All right, good day to you, then.

IN UNISON:  Thank you, Your Honor.

UNIDENTIFIED SPEAKER:  Have a good weekend.

THE COURT:  You too.

(Whereupon these proceedings were concluded at 10:12 AM)

**C E R T I F I C A T I O N**

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

September 23, 2016

_____          _____

PENINA WOLICKI                              DATE

AAERT Certified Electronic Transcriber CET**D-569

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

EMERALD OIL, INC., et al.
Case No. 16-10704(KG)

September 22, 2016

## A

**able (3)**
8:14;13:6,6
**accommodating (1)**
7:6
**accommodations (1)**
9:22
**account (1)**
9:17
**actually (2)**
9:1;10:15
**additional (1)**
9:19
**address (2)**
6:12;10:18
**adequate (1)**
10:17
**adequately (1)**
13:11
**administrative (3)**
8:1;9:15;11:11
**advance (1)**
6:10
**advise (1)**
10:18
**again (1)**
7:22
**agent (1)**
8:5
**agreement (2)**
8:7;12:1
**agreement- (1)**
7:14
**agreement-in-principle (1)**
6:5
**agreements (4)**
8:4;9:24;10:2,9
**ahead (1)**
9:7
**Akin (1)**
11:21
**allow (1)**
9:23
**allowance (1)**
11:10
**along (1)**
10:15
**among (2)**
7:17,24
**AMY (1)**
4:14
**announce (1)**
7:14
**apologize (1)**
7:7
**appreciate (1)**
12:17
**approval (1)**
7:16
**approximately (1)**
9:17

**arrangements (1)**
10:12
**aside (1)**
12:15
**associated (1)**
10:22
**assumed (2)**
10:3;11:15
**assuming (1)**
10:8
**Attorneys (8)**
4:2,7,13,19,24;5:3,
8,13
**auction (1)**
9:5
**aware (2)**
9:6;10:13

## B

**back (1)**
8:25
**Bank (1)**
4:19
**basically (1)**
10:3
**beat (1)**
11:23
**behalf (2)**
8:5;11:22
**benefit (1)**
10:13
**Bennett (12)**
6:4,8,10,18,22;7:5,
6,11,19,21,23;8:9
**Bennett's (1)**
7:3
**bid (6)**
9:7,8,23;11:10,13,
14
**bidder (1)**
9:5
**bidding (1)**
8:23
**bit (1)**
7:20
**bittersweet (1)**
14:5
**BLAKE (1)**
4:25
**both (1)**
8:20
**Botter (5)**
11:21,21;12:17,18,
20
**breaking (1)**
7:19
**budget (2)**
12:13,16

## C

**Cache (1)**

**5:3**
**call (1)**
6:17
**came (1)**
7:10
**can (2)**
10:18,20
**Capital (2)**
4:7,13
**CARL (1)**
5:4
**CARLYLE (1)**
4:18
**case (5)**
8:16;11:25;12:2,5;
14:3
**case-ending (1)**
12:9
**cash (4)**
9:8,25;11:14,18
**ceiling (1)**
12:13
**center (1)**
12:15
**challenge (1)**
12:19
**change (1)**
10:5
**changed (1)**
10:9
**changes (2)**
10:3,3
**Chapter (1)**
10:23
**Chemicals (1)**
5:8
**CHRISTOPHER (1)**
4:3
**claim (1)**
10:1
**claims (1)**
11:14
**cleared (1)**
13:7
**CLEARY (9)**
4:25;6:8,9,21;
12:22,24;13:8,10,25
**clients (1)**
12:13
**close (2)**
9:18,21
**closing (1)**
10:23
**cocktail (1)**
8:25
**COHEN (1)**
5:14
**colleagues (1)**
7:13
**COLLINS (1)**
4:9
**commitments (1)**
10:4

**Committee (5)**
4:2;8:16;11:22,23;
12:5
**company (4)**
6:17;10:21;11:1,3
**CONAWAY (1)**
4:23
**concerned (1)**
11:24
**concluded (1)**
14:18
**conclusion (1)**
12:5
**confirmed (1)**
10:23
**connection (1)**
13:16
**constraints (1)**
11:2
**constructive (1)**
12:4
**contingent (1)**
11:18
**conversations (2)**
12:6,7
**Cortland (2)**
4:7,13
**costs (1)**
10:22
**COURT (34)**
6:2,12,15,19,22,
25;7:4,9,19,22,25;
8:2,6,9,12,19;9:14;
10:10,16;11:7,9,16,
20;12:11,18,22;13:3,
6,9,19,25;14:10,13,
17
**COURTCALL (1)**
7:3
**credit (4)**
9:7,23;11:10,13
**creditors (1)**
12:15
**Creditors' (2)**
4:2;11:22
**crude (2)**
8:1;9:11
**curious (1)**
8:19
**currently (2)**
9:16;10:19

## D

**Dakota (4)**
4:24;5:18,19;
13:15
**damage (1)**
10:1
**David (1)**
11:21
**day (4)**
10:8;13:4,24;

**14:13**
**deal (1)**
12:8
**dedication (2)**
9:24;10:2
**defer (1)**
6:13
**definitely (1)**
13:10
**definitive (1)**
7:16
**dialing (1)**
6:18
**dialog (1)**
10:21
**DIP (2)**
8:6;10:15
**dispute (2)**
9:10;10:7
**disputes (3)**
7:16,24;12:4
**DMS (8)**
8:21,21;9:11,18,
20,25,25;13:15
**document (1)**
9:1
**documentation (1)**
7:16
**documented (1)**
13:18
**documents (1)**
9:2
**dollars (4)**
9:17,25;10:1;
12:14
**done (1)**
9:2
**doubt (1)**
11:2
**down (1)**
12:14

## E

**earlier (1)**
8:16
**early (1)**
11:25
**economics (2)**
10:2,9
**else (1)**
14:1
**email (2)**
6:4;7:7
**Emerald (1)**
5:13
**end (1)**
10:20
**equally (1)**
13:13
**equity (1)**
13:15
**ERICKA (1)**

EMERALD OIL, INC., et al.
Case No. 16-10704(KG)

September 22, 2016

4:20
**escrow (2)**
9:12,16
**ESQ (10)**
4:3,8,9,14,15,20,
25;5:4,9,14
**estate (4)**
8:21;9:10,24;10:5
**everyone (2)**
6:2;14:10
**exchange (1)**
9:22
**executed (1)**
13:13
**exist (1)**
10:9
**expecting (1)**
9:3
**expense (2)**
8:1;9:15
**expenses (1)**
11:11
**extend (1)**
10:19
**extent (1)**
13:24

**F**

**facility (2)**
10:15,19
**fact (1)**
12:2
**fair (1)**
14:6
**Fargo (1)**
4:19
**feverishly (1)**
9:2
**few (1)**
8:6
**figure (1)**
11:2
**financing (1)**
11:8
**fine (2)**
6:19,25
**FINGER (1)**
4:6
**finishing (1)**
6:17
**First (1)**
12:24
**fixing (1)**
10:6
**flowing (1)**
13:15
**focusing (1)**
10:14
**form (2)**
11:5,18
**forward (2)**
8:22;14:6

**Friday's (1)**
13:1
**front (1)**
12:15
**fully (1)**
13:23
**funds (3)**
9:12,16,19

**G**

**gathering (1)**
8:3
**given (1)**
12:3
**global (1)**
10:14
**Good (11)**
6:2;7:5,6,8,10;
8:11,12;10:10;14:2,
13,16
**GOTSHAL (1)**
4:12
**Gross (2)**
6:2;7:5
**groundwork (1)**
8:14
**Gump (1)**
11:22

**H**

**HAMPTON (1)**
5:12
**happy (6)**
6:13,19,24;11:23;
13:4,8
**hard (5)**
6:3;7:1;13:1;14:2,
3
**hear (1)**
11:23
**heard (2)**
11:1;14:1
**hearing (5)**
6:4;7:9;9:4;13:1;
14:7
**HEATH (1)**
5:19
**high (1)**
8:17
**Holdings (1)**
5:13
**Honor (17)**
6:9,16,21,24;8:11,
17;9:3,9;10:18;
11:21,22;12:20,24;
13:11,21;14:9,15
**Honor's (1)**
10:13
**hope (1)**
12:20
**hopeful (2)**

12:3,4
**hopefully (5)**
7:7;10:8,23;11:5,5
**horse (1)**
9:9
**hours (1)**
14:4
**hundred (1)**
11:13

**I**

**III (1)**
5:4
**imagine (2)**
8:13;10:25
**implications (1)**
12:9
**important (1)**
13:14
**includes (1)**
8:22
**including (1)**
13:19
**incredibly (1)**
12:3
**indiscernible (1)**
7:18
**infuse (1)**
11:3
**initiated (1)**
10:21
**in-principle (1)**
7:15
**intend (1)**
10:19
**intent (2)**
8:25;13:13
**into (2)**
11:3;13:17
**involved (3)**
11:25;12:6,7
**issue (1)**
8:15
**issues (8)**
8:15,15,20;11:24;
12:10;13:2,20,22

**J**

**Jacam (1)**
5:8
**JAMES (2)**
5:2,7
**Joe (3)**
6:11,16;12:17
**JOHNSON (1)**
4:20
**JOSEPH (1)**
4:15
**Judge (4)**
6:2;7:5,21;8:8
**judgment (2)**

8:3;13:23

**K**

**kind (2)**
11:18;14:5
**knew (1)**
7:11
**KUNZ (1)**
5:4

**L**

**last (2)**
6:3;8:25
**late (1)**
7:12
**late-night (1)**
7:7
**lawyer (1)**
12:4
**LAYTON (1)**
4:6
**least (1)**
10:20
**left (1)**
10:8
**legal (4)**
10:5,7;13:20,22
**lenders (6)**
8:6,21;9:7,23;
10:17;12:1
**lengthy (1)**
8:14
**letter (2)**
8:24;13:12
**level (1)**
8:17
**line (1)**
7:3
**liquidating (2)**
10:24;12:2
**liquidity (1)**
11:1
**listen (1)**
6:7
**little (1)**
7:20
**live (1)**
7:3
**LLC (1)**
4:24
**LLP (6)**
4:12,18,23;5:2,7,
12
**look (1)**
14:6
**lot (1)**
13:12
**LP (1)**
4:1

**M**

**making (1)**
13:20
**MANGES (1)**
4:12
**marching (1)**
10:15
**MARK (1)**
4:9
**Market (2)**
4:7,13
**matures (1)**
10:15
**maturity (1)**
10:19
**may (2)**
11:3,18
**meantime (1)**
14:11
**Midstream (3)**
4:24;5:18,19
**might (1)**
13:7
**MILLER (1)**
5:9
**million (4)**
9:17,25;10:1;
12:14
**minimum (1)**
10:4
**minute (1)**
6:23
**moment (1)**
13:17
**money (1)**
11:3
**monitoring (1)**
13:19
**month (1)**
10:20
**more (4)**
6:23;11:3;14:7,7
**morning (6)**
6:2,6;7:5,6;8:11,
12
**MORRIS (2)**
5:2,7
**motion (1)**
9:15
**motions (3)**
7:17,25;8:2
**moving (1)**
9:7
**much (2)**
8:15;14:8
**MULLIN (1)**
5:12

**N**

**NA (1)**

4:19
**napkin (1)**
9:1
**NDMS (1)**
10:6
**necessary (4)**
11:19;12:19,21;
13:24
**need (3)**
9:2;13:17;14:11
**New (1)**
5:13
**news (2)**
7:8;14:2
**next (2)**
9:2;14:7
**night (2)**
6:3;8:25
**NORMAN (1)**
5:19
**numbers (1)**
10:25

**O**

**obviously (4)**
11:24;12:7,9;
13:12
**occasion (1)**
7:25
**October (1)**
9:19
**ODEN (1)**
4:14
**off (1)**
12:13
**Official (1)**
4:2
**oil (1)**
9:11
**one (4)**
6:23;9:6;11:23;
13:14
**OPERATOR (1)**
7:3
**order (3)**
9:23;11:14;13:19
**orders (1)**
13:18
**out (2)**
10:12;11:2
**over (1)**
9:17
**overall (1)**
13:11

**P**

**PA (1)**
4:6
**paid (2)**
11:14,19
**part (1)**

9:18
**partial (1)**
11:13
**particulars (1)**
13:17
**parties (2)**
7:17,24
**passing (1)**
13:20
**payments (1)**
11:19
**peace (1)**
10:14
**peel (1)**
12:13
**pending (1)**
8:2
**percent (1)**
11:13
**phone (5)**
6:8,11,14;7:5,13
**piece (3)**
11:18;13:14,14
**plan (2)**
10:24;12:2
**pleased (2)**
7:14;13:4
**point (1)**
9:6
**positions (2)**
10:5,7
**possible (1)**
9:21
**prepare (2)**
14:3,3
**prepared (3)**
6:7;7:1;13:1
**preparing (2)**
6:3;7:9
**pre-petition (1)**
8:5
**PRESENT (1)**
5:17
**presenting (1)**
13:2
**preserved (1)**
13:23
**PRESTON (1)**
4:1
**pricing (1)**
10:3
**prior (3)**
7:17,25;9:19
**probably (1)**
12:25
**procedures (1)**
8:23
**proceed (1)**
12:2
**proceedings (1)**
14:18
**process (1)**
10:21

**propose (1)**
7:23
**proposed (2)**
7:15;12:16
**provide (1)**
6:10
**provided (1)**
13:11
**providing (1)**
9:25
**purchase (1)**
8:22
**purchaser (2)**
10:6;11:15
**pursuant (1)**
8:22
**put (3)**
9:23;12:15;14:4

**Q**

**quickly (1)**
9:21

**R**

**reach (2)**
10:14;14:11
**ready (2)**
12:6,19
**realize (1)**
11:12
**received (1)**
7:8
**referred (1)**
13:16
**rejection (2)**
8:3;13:22
**relative (1)**
10:5
**reserve (1)**
12:7
**resolution (1)**
11:24
**resolve (4)**
7:15,24;8:14;
11:14
**resolved (5)**
8:15,18,20;9:12,13
**resolves (1)**
7:15
**respect (6)**
8:1,3,21;9:11;
10:22;13:22
**result (2)**
14:5,6
**resulted (1)**
9:16
**revised (1)**
9:24
**REYNOLDS (1)**
5:18
**RICE (1)**

4:18
**RICHARDS (1)**
4:6
**RICHTER (1)**
5:12
**right (12)**
6:15;11:9,17,20;
12:11,14,18,22;
13:25;14:10,13,13
**rights (1)**
12:8
**roadmap (1)**
9:1
**rule (1)**
13:21

**S**

**sale (6)**
9:4,18,21;10:20,
23;13:19
**SAMIS (1)**
4:3
**SANDRIDGE (1)**
4:18
**seeing (2)**
12:13;14:7
**Services (2)**
4:7,13
**settlement (4)**
7:23;8:24;9:10,18
**several (1)**
13:18
**severe (1)**
11:1
**SHAPIRO (1)**
4:8
**sheet (1)**
12:8
**SHEPPARD (1)**
5:12
**sign (1)**
8:24
**sits (1)**
9:16
**situation (1)**
10:18
**sizeable (1)**
10:25
**SMOLINSKY (22)**
4:15;6:11,16,16,
23;7:2;8:5,8,10,11,
13,20;9:15;10:11,17;
11:8,12,17,25;12:3,
12;13:10
**soon (2)**
12:12,12
**sorry (1)**
7:21
**sounds (1)**
14:6
**SPEAKER (3)**
14:8,12,16

4:18
**spend (1)**
13:4
**splitting (1)**
9:12
**spoken (1)**
6:9
**stalking (1)**
9:9
**stalking-horse (1)**
9:8
**stands (1)**
12:6
**STARGATT (1)**
4:23
**stay (1)**
7:12
**STEPHEN (1)**
5:9
**storage (2)**
9:11,11
**stored (1)**
8:1
**subject (1)**
7:15
**substance (1)**
10:11
**substantial (1)**
12:9
**successor (1)**
10:6
**sum (1)**
10:11
**summary (4)**
8:3,7;13:11,23
**supersede (1)**
9:8
**sure (4)**
13:3,8,20;14:5

**T**

**talk (1)**
8:10
**target (1)**
9:20
**TAYLOR (2)**
4:1,23
**TED (1)**
5:14
**teleconference (1)**
6:6
**telephone (1)**
6:3
**TELEPHONICALLY (1)**
5:17
**telling (1)**
6:5
**ten (1)**
10:1
**term (1)**
12:8
**terms (4)**
8:7;9:24;13:11,12

**Thanks (1)**
    7:6
**That'll (1)**
    10:7
**thereafter (1)**
    10:24
**third-party (1)**
    9:5
**thought (1)**
    6:10
**TIMOTHY (1)**
    5:18
**today (1)**
    10:15
**tomorrow (1)**
    6:4
**Trucking (1)**
    5:3
**Trustee (1)**
    12:1
**try (1)**
    7:22
**trying (1)**
    10:14
**two (3)**
    8:2;9:25;12:14

**U**

**under (5)**
    8:24;9:10,24;10:2;
    11:1
**UNIDENTIFIED (3)**
    14:8,12,16
**UNISON (1)**
    14:15
**unsecured (2)**
    10:1;12:15
**up (4)**
    6:17;7:12,19;13:7
**update (3)**
    6:11,14;11:8

**V**

**various (1)**
    7:16
**volume (1)**
    10:4

**W**

**wait (2)**
    6:19;7:1
**walk (1)**
    6:13
**way (3)**
    10:6;11:2;13:18
**week (2)**
    9:2;14:7
**weekend (2)**
    13:7;14:16
**WEIL (1)**

    4:12
**Wells (1)**
    4:19
**what's (1)**
    8:18
**Whereupon (1)**
    14:18
**WHITEFORD (1)**
    4:1
**wife (1)**
    13:7
**wish (1)**
    14:1
**WOMBLE (1)**
    4:18
**work (1)**
    6:3
**worked (3)**
    6:25;10:12;14:2
**working (4)**
    9:21;11:17;13:1;
    14:3

**Y**

**yield (1)**
    8:7
**YOUNG (1)**
    4:23

**Z**

**ZACHARY (1)**
    4:8

**1**

**10:12 (1)**
    14:18
**11 (1)**
    10:23
**15th (1)**
    9:19

**2**

**2.4 (1)**
    9:17
**20013 (1)**
    5:8

**3**

**30th (2)**
    9:3;11:4