UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Lead Case No. 16-10704(KG)  Adv. Proc. No. 16-50998(KG)

- - - - - - - - - - - - - - - - - - - - - -x

In the Matters of:

EMERALD OIL, INC., et al.,

            Debtors.

- - - - - - - - - - - - - - - - - - - - - -x

EMERALD OIL, INC., et al.,

               Plaintiffs,

          - against -

DAKOTA MIDSTREAM, LLC, et al.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - -x

               United States Bankruptcy Court

               824 North Market Street

               Wilmington, Delaware

               September 30, 2016

               2:00 PM

B E F O R E:

HON. KEVIN GROSS

U.S. BANKRUPTCY JUDGE

ECR OPERATOR:  GINGER MACE

Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts with the Dakota Midstream Parties and (II) Granting Related Relief [Filed 6/3/16] (Docket No. 362)

Plaintiff's Motion for Summary Judgment [Filed: 6/17/16] (Adv. Pro. No. 16-50998, Docket No. 6)

Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for Assumption and Assignment of Contracts, and(E) Granted Related Relief and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, and (B) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief [Filed: 5/25/16] (Docket No. 336)

Transcribed by:  Penina Wolicki

A P P E A R A N C E S :  (TELEPHONICALLY)

PACHULSKI STANG ZIEHL & JONES LLP

        Attorneys for Debtors

BY:    LAURA DAVIS JONES, ESQ.

        JOSEPH M. MULVIHILL, ESQ.

KIRKLAND & ELLIS LLP

        Attorneys for Debtors

BY:    RYAN B. BENNETT, ESQ.

        TRAVIS M. BAYER, ESQ.

        WILLIAM E. ARNAULT, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE

        Office of the United States Trustee

BY:    HANNAH M. MCCOLLUM, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE

        Civil Division, Commercial Litigation Branch

BY:    MARY A. SCHMERGEL, ESQ.

AKIN GUMP STRAUSS HAUER & FELD LLP

    Attorneys for the Official Creditors' Committee

BY:   SARAH L. SCHULTZ, ESQ.

       DAVID H. BOTTER, ESQ.

WHITEFORD TAYLOR PRESTON LP

    Attorneys for the Official Creditors' Committee

BY:   CHRISTOPHER M. SAMIS, ESQ.

RICHARDS, LAYTON & FINGER, PA

    Attorneys for Cortland Capital Market Services

BY:   ZACHARY SHAPIRO, ESQ.

       MARK D. COLLINS, ESQ.

WEIL, GOTSHAL & MANGES LLP

    Attorneys for Cortland Capital Market Services

BY:   JOSEPH H. SMOLINSKY, ESQ.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

    Attorneys for Dakota Midstream LLC

BY:   M. BLAKE CLEARY, ESQ.

MORRIS JAMES LLP

Attorneys for Cache Trucking

BY:   CARL N. KUNZ, III, ESQ.

MORRIS JAMES LLP

Attorneys for Jacam Chemicals 20013

BY:   STEPHEN M. MILLER, ESQ.

SHEPPARD MULLIN RICHTER & HAMPTON, LLP

Attorneys for New Emerald Holdings

BY:   TED A. COHEN, ESQ.

ALAN M. FELD, ESQ.

GIBBONS P.C.

Attorneys for New Emerald Holdings

BY:   NATASHA SONGONUGA, ESQ.

BROWNSTEIN HYATT FARBER SCHRECK LLP

Attorneys for Stawson Exploration Company

BY:   STEVEN A. ABELMAN, ESQ.

SHAW FISHMAN GLANTZ & TOWBIN, LLC

         Attorneys for Stawson Exploration Company

BY:    THOMAS M. HORAN, ESQ.

FOX ROTHSCHILD, LLP

         Attorneys for McKenzie Electric Cooperative, Inc.

BY:    L. JOHN BIRD, ESQ.

         PAUL J. LABOV, ESQ.

COLE SCHOTZ P.C.

         Attorneys for Koch Exploration

BY:    NICHOLAS J. BRANNICK, ESQ.

SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.

         Attorneys for Koch Exploration

BY:    MICHAEL J. LICHTENSTEIN, ESQ.

CHIPMAN BROWN CICERO & COLE, LLP

         Attorneys for A2D Technologies, Inc.

BY:    WILLIAM E. CHIPMAN, ESQ.

CONNOLLY GALLAGHER LLP

 Attorneys for FMC Technologies Inc., et al.

BY:   N. CHRISTOPHER GRIFFITHS, ESQ.

DIAMOND MCCARTHY LLP

 Attorneys for AIG Insurance Company of Canada

BY:   ADAM L. ROSEN, ESQ.

ALSO PRESENT:  (TELEPHONICALLY)

 TIMOTHY L. REYNOLDS, Dakota Midstream

 HEATH NORMAN, Dakota Midstream

P R O C E E D I N G S

THE COURT:  Good afternoon, everyone.  Judge Gross on the telephone.  And this is the date and time where we were going to be having a hearing on various matters, and the parties have asked to adjourn that hearing date -- or this hearing date, I should say -- and to have a teleconference instead.  Mr. --

MR. BENNETT:  Good morning, Your Honor.  It's Ryan Bennett on behalf of the debtors.  Thanks for accommodating us today, sir.

THE COURT:  Yes, sir.

MR. BENNETT:  And that is correct, Your Honor.  We do intend to request a short adjournment, but did want to speak to the Court and provide the Court and the various parties with an update as to the developments, to date, in the sale process, as well as what we need to do to get us in a position for that sale hearing.

THE COURT:  And just so you'll know, Mr. Bennett, there is a member of the press here, and I don't know if that creates a problem for you or not.

MR. BENNETT:  No, that's fine, sir.  But thank you for letting me know.

THE COURT:  Okay.  All right, you may proceed.

MR. BENNETT:  Thank you, Judge.  In terms of what has developed since we last spoke with the Court, the bid deadline

for the 363 sale process was this past Tuesday.  The only bid we received was a credit bid, as we anticipated, by the agent on behalf of the pre-petition secured lenders.  That bid is in the amount of 110,500,000 dollars.  The stalking horse informed us that it was not going to overbid that credit bid or compete with that credit bid; and upon learning that, the debtors cancelled the auction that was scheduled for yesterday and declared the credit bid the successful bid for the sale -- the winning bid for the sale.

We were anticipating that result, Your Honor, as I think we mentioned when we last spoke with the Court after the Dakota settlement.  And so we've been working actively with the lenders to identify, refine, rationalize, the various funding requirements that are going to need to be made into the estate for the debtors to consummate a sale and then go forward with a liquidating plan that's feasible.

And so if and once the purchaser-lenders agree to fund those amounts -- and we are actively negotiating and discussing them -- those obligations would be funded at or prior to closing, and they could come in the form of an additional advance under the DIP loan and/or a cash component to the credit bid purchase price, in either case, providing the debtors with liquidity that we could then use to honor secured admin priority claims that need to be satisfied after the revenue-generating valuable assets are removed from the estate.

Among the obligations that are going to need to be rationalized and agreed to be funded by the purchaser are the -- are various alleged lienholder claims by a number of the debtors' vendors.  The debtors believe that many of these claims are overstated or not entitled to priority treatment for a number of reasons, but we're actively attempting to negotiate consensual resolutions with the claimants, and we've been, I would say, pretty successful so far, in the past week.  And if we can continue that rate of success and reduce the cash funding requirements to a number that's acceptable to the purchaser-lenders, then I think our ability to consummate a sale is substantially improved.

And so that's as large focus over the next ten days or so, is going to be on trying to drive that -- get that number to something reasonable that works for the company and the lenders and as well as the lienholder claimants.

Additionally, Judge, you'll of course recall that we settled with Dakota Midstream on a tentative basis.  And so when we put down our swords, we picked up our pens, and we've been actively trying to document that agreement.  There's not just the amendments to the gathering agreements but also the various orders with respect to the motions that were pending that we need to get wrapped up and filed and submitted.  And we don't see any issues at present.  It's just something that requires some time.

THE COURT: Absolute -- yes, I can understand that.

MR. BENNETT: And in terms of the definitive sale -- I'm sorry. Oh, I was just going to say, in terms of the definitive sale hearing, we would request that the Court adjourn that hearing over to October 11th at 12:30 p.m. Eastern. I believe that time worked for the Court, and we advised Dakota and the unsecured creditors' committee and the lender-purchasers of that date as well, and it works for them also.

THE COURT: All right. You've got that time and date.

MR. BENNETT: Thank you, sir. And then just to round it out, Judge, I mean, I know we had a kind of heated scheduling conference at the end of August, right, where we were talking about the debtors' liquidity position and how we weren't able to get past September 30th, or we didn't think we could. And I just wanted to advise that that definitely was the projections -- those were the projections that we had at that time. And but fortunately, there has been an uptick in commodity prices and also the absence of any kind of material cash-flow hits to the debtor -- or cash-position hits to the debtors in the meantime. And so we do have, albeit thin, we do have a cash position that can get us through October 11th.

And but we still need to move forward quickly, because we are cash-flow negative. The DMS litigation was not, by any means, insignificant in terms of those costs. And we need to

move quickly ahead.  So that just rounds up my presentation, Your Honor.  I'm happy to take any questions that you have.

THE COURT:  I don't think I have any, and I'd be anxious to hear from anyone else who wished to be heard.

MR. SMOLINSKY:  Good afternoon, Your Honor.  It's Joe Smolinsky from Weil, Gotshal & Manges, on behalf of the pre-petition agent and the DIP agent.

I just wanted to put some more meat on the bone of Mr. Bennett's presentation.  As you know, Your Honor, there's certainly no requirement of a purchaser of assets to ensure that there's sufficient liquidity left in the shell debtor to take care of all their obligations and be able to confirm a Chapter 11 plan.  Nevertheless, we've been doing the best we can to get to the point where everyone is comfortable that that goal has been achieved.

Since we first started discussing these issues with the company, we've been provided with information and data about the expected level of administrative expense claims, lien claims, and other obligations.  And frankly, the numbers were startling.  When we started peeling back the onion, we, together with the company and others, think we've identified a path to getting to a set of numbers that we could live with and close on the sale in a manner that creates the optimal outcome for the company.

That work is ongoing.  It's uncertain.  But we think

that we could achieve that result.  So that is the reason why we all agreed that rather than go into a hasty sale hearing and approve the sale today without knowing what happens on the other end, we thought it was prudent to give it another couple of days in order to work and refine those numbers and to have the discussions and negotiations that Mr. Bennett referred to.

So it's a bit uncertain at the moment, but we're all working very hard to try to achieve that result.

THE COURT:  All right.  Well, I certainly would expect that administrative claims and lien claims and the like be paid and that the estate not go to a sale which results in administrative insolvency.

MR. SMOLINSKY:  Yes, Your Honor.  And the issue is about the validity of those claims.  And --

THE COURT:  Right.

MR. SMOLINSKY:  -- I think everyone concedes that there are a number of claims that are not valid on their face.  And rather than go through adversary proceedings in which to right-size those numbers, if we can get to a negotiated settlement, that would be just great.  And so that's what we're trying to achieve.

THE COURT:  Okay.  Very fine.  That's fine.

MR. BOTTER:  Your Honor, it's David Botter from Akin Gump, on behalf of the creditors' committee.  And I'll be very brief.

Mr. Smolinsky and his clients have been very constructive and everyone is working towards the goal that Mr. Bennett and Mr. Smolinsky have identified.  And obviously, Your Honor, I agree with what Your Honor said.  In addition, we obviously -- the committee has made a settlement with Mr. Smolinsky's clients regarding the two-million-dollar payment to unsecured creditors in these cases, and we're all working hard to get to that result.

And the only thing I would note, and I think Your Honor is well aware of this, is that before Mr. Smolinsky was involved in the case, before his clients acquired the debt, we had had conversations about whether or not a purchaser or credit bidder of assets would, in fact, fund a plan, and they were a little bit different.  But hopefully it won't matter and we'll all get there based upon our constructive conversations.

THE COURT:  Well, I'm counting on your getting there. And I don't want to say more or ask questions that will in any way interfere with that process.  So I certainly will allow you to proceed.  And we'll schedule this, as Mr. Bennett has said, for 11th at 12:30.  And hopefully matters will be resolved by then.  Of course, if you need me, you can get me on the telephone ahead of time.

MR. CLEARY:  Your Honor, this is Blake Cleary for Dakota Midstream.  I did want to point out to the Court that earlier this week, on Wednesday, the debtors and Dakota filed a

notice of filing and put on the docket the letter of intent with respect to the settlement that was announced last week on the record.  And the expectation of the parties is that that will be documented into probably a couple of different orders that would be submitted to the Court in connection with the sale hearing.  And included in what is expected to be part of the settlement are various releases by and among the parties. So I wanted to make the Court aware of kind of the process under which that settlement would be documented.

THE COURT:  Thank you, Mr. Cleary.  I will go and look for that.  I appreciate your telling me.

All right, is there anything else from anyone?

All right, hearing no one, continue to do some good work; and I will see you on the 11th.

MR. KUNZ:  Sorry, Your Honor, this is Chuck Kunz for Cache Construction.

THE COURT:  Yes.

MR. KUNZ:  I just had a quick question in terms of timing as we approach the October hearing.  Are there -- is there a new set of deadlines in place, or how does this kind of work as these documents are filed?

THE COURT:  That's a good question, Mr. Kunz.

Mr. Bennett, any thoughts on that?

MR. BENNETT:  Your Honor, we hadn't envisioned any kind of new -- any new deadlines.  I mean, there will be -- we

will file documents including namely the number of the Dakota settlement.  Documents are going to be filed.  But I don't think we'd identified any particular deadlines.

If Mr. Kunz wants to give us, kind of, more specifics, wants to know (sic) what he's looking for, we're happy to talk about that.

THE COURT:  I assume Mr. Kunz wants to know an objection deadline, for example.

MR. SMOLINSKY:  Your Honor, this is Joe Smolinsky. One of the reasons for the short adjournment was to see what's in front of us.  And rather than adjourn the hearing two days ago, it was very important to us to have this hearing, to have the objection deadline, which occurred at 10 o'clock this morning, I believe.  We want to make sure that we understand the full slate of issues that we need to navigate.  And so my view would be very strongly that the objection deadline has passed.

If someone has an issue, they should reach out to us. But the whole point -- one of the purposes of having this hearing today was to see whether anyone was out there that we were not aware of.  I don't want to create another issue by setting a new deadline.

THE COURT:  I see.  Okay.

MR. BENNETT:  And this is Ryan Bennett, again, Judge. I believe Mr. Kunz filed a reservation of rights on behalf of

his client.  So I mean, it's out there.  He filed that by the objection deadline.  And if he wants to come and be heard at the hearing on October 11th, then he can.

MR. SMOLINSKY:  Yes, absolutely.  And we have that document and we've reviewed it.

THE COURT:  All right.

MR. KUNZ:  Yeah, and there was -- Your Honor, this is Chuck Kunz again.  It was just a matter of trying to understand what the deal is that is being offered up for sale.  So I guess we were looking for some information.  And as long as we have an opportunity to speak at the hearing or deal with -- if there are any issues.  We're hopeful to work them out.  We in fact, think we have worked them out.  But just in case something goes sideways, we'd like an opportunity to be heard.

THE COURT:  Well, I think the --

MR. KUNZ:  We're both a lien claimant and cure issues, and all kinds of stuff.  So --

THE COURT:  I think the basics of the sale are on the table at the moment, with parties negotiating over the liens and the administrative claims.  So I don't know that there's going to be any real movement here other than those matters.

Is that right, Mr. Smolinsky?

MR. SMOLINSKY:  Well, we have a call scheduled for Sunday with the company.  And on our list of things to discuss are Mr. Kunz's claims.  And we will reach out to him right

after that call when we get some background to make sure that his interests are taken care of.

THE COURT: Okay. I know the company is running short on money. Is the 11th a realistic date?

MR. BENNETT: Your Honor, Ryan Bennett again. We did carefully look at this exact point, Judge. And we think that while it is tight, it is -- it's really -- we can make it. And quite frankly, I think we're going to need those days to get this deal -- if we're going to be able to get this deal locked down the way we've been talking about. I think we're going to need that time. And we have the -- while thin, we have the ability to get there from a cash position standpoint.

THE COURT: All right. I will trust you, then, with the date.

MR. BENNETT: Thank you, sir. And with respect to Mr. Kunz, just like Mr. Smolinsky said, the debtors have been in contact with his client and are going to continue to be. So we're not -- we're by no means going dark between now and October 11th. It's very much -- the priority objective is to try to reach some kind of a workable deal that can work for the lenders and get the sale done.

THE COURT: All right. Well, I hope that's case. And as I said, I'll see you on the 11th. If you need me in the meantime, let me know, and we'll get back on the phone.

MR. BENNETT: Great. Thank you very much, Judge.

THE COURT:  All right, everyone.  Good weekend, good day to you.

IN UNISON:  Thank you, Your Honor.

(Whereupon these proceedings were concluded at 2:18 PM)

## C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

October 5, 2016

_____          _____

PENINA WOLICKI                           DATE

AAERT Certified Electronic Transcriber CET**D-569

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

**A**

**A2D (1)**
6:24
**ABELMAN (1)**
5:25
**ability (2)**
10:11;18:12
**able (3)**
11:15;12:12;18:9
**absence (1)**
11:19
**Absolute (1)**
11:1
**absolutely (1)**
17:4
**acceptable (1)**
10:10
**accommodating (1)**
8:9
**achieve (3)**
13:1,8,21
**achieved (1)**
12:15
**acquired (1)**
14:11
**actively (4)**
9:12,18;10:6,20
**ADAM (1)**
7:9
**addition (1)**
14:4
**additional (1)**
9:20
**Additionally (1)**
10:17
**adjourn (3)**
8:5;11:5;16:11
**adjournment (2)**
8:13;16:10
**admin (1)**
9:24
**administrative (4)**
12:18;13:10,12;
17:20
**advance (1)**
9:21
**adversary (1)**
13:18
**advise (1)**
11:16
**advised (1)**
11:7
**afternoon (2)**
8:2;12:5
**again (3)**
16:24;17:8;18:5
**agent (3)**
9:2;12:7,7
**ago (1)**
16:12
**agree (2)**

9:17;14:4
**agreed (2)**
10:2;13:2
**agreement (1)**
10:20
**agreements (1)**
10:21
**ahead (2)**
12:1;14:22
**AIG (1)**
7:8
**AKIN (2)**
4:1;13:23
**al (1)**
7:3
**ALAN (1)**
5:15
**albeit (1)**
11:21
**alleged (1)**
10:3
**allow (1)**
14:18
**amendments (1)**
10:21
**Among (2)**
10:1;15:7
**amount (1)**
9:4
**amounts (1)**
9:18
**and/or (1)**
9:21
**announced (1)**
15:2
**anticipated (1)**
9:2
**anticipating (1)**
9:10
**anxious (1)**
12:4
**appreciate (1)**
15:11
**approach (1)**
15:19
**approve (1)**
13:3
**assets (3)**
9:25;12:10;14:13
**assume (1)**
16:7
**attempting (1)**
10:6
**Attorneys (17)**
4:2,8,13,19,24;5:3,
8,13,19,24;6:3,8,14,
19,24;7:3,8
**auction (1)**
9:7
**August (1)**
11:13
**aware (3)**
14:10;15:8;16:21

**B**

**back (2)**
12:20;18:24
**background (1)**
18:1
**based (1)**
14:15
**basics (1)**
17:18
**basis (1)**
10:18
**behalf (5)**
8:9;9:3;12:6;
13:24;16:25
**BENNETT (19)**
8:8,9,12,18,21,24;
11:2,11;13:6;14:3,
19;15:23,24;16:24,
24;18:5,5,15,25
**Bennett's (1)**
12:9
**best (1)**
12:13
**bid (10)**
8:25;9:1,2,3,5,6,8,
8,9,22
**bidder (1)**
14:13
**BIRD (1)**
6:9
**bit (2)**
13:7;14:14
**BLAKE (2)**
4:25;14:23
**bone (1)**
12:8
**both (1)**
17:16
**BOTTER (3)**
4:4;13:23,23
**BRANNICK (1)**
6:15
**brief (1)**
13:25
**BROWN (1)**
6:23
**BROWNSTEIN (1)**
5:23

**C**

**Cache (2)**
5:3;15:16
**call (2)**
17:23;18:1
**can (9)**
10:9;11:1,22;
12:14;13:19;14:21;
17:3;18:7,20
**Canada (1)**
7:8

**cancelled (1)**
9:7
**Capital (2)**
4:13,19
**care (2)**
12:12;18:2
**carefully (1)**
18:6
**CARL (1)**
5:4
**case (4)**
9:22;14:11;17:13;
18:22
**cases (1)**
14:7
**cash (4)**
9:21;10:9;11:22;
18:12
**cash-flow (2)**
11:20,24
**cash-position (1)**
11:20
**certainly (3)**
12:10;13:9;14:18
**Chapter (1)**
12:13
**Chemicals (1)**
5:8
**CHIPMAN (2)**
6:23,25
**CHRISTOPHER (2)**
4:9;7:4
**Chuck (2)**
15:15;17:8
**CICERO (1)**
6:23
**claimant (1)**
17:16
**claimants (2)**
10:7,16
**claims (11)**
9:24;10:3,5;12:18,
19;13:10,10,14,17;
17:20,25
**CLEARY (4)**
4:25;14:23,23;
15:10
**client (2)**
17:1;18:17
**clients (3)**
14:1,6,11
**close (1)**
12:23
**closing (1)**
9:20
**COHEN (1)**
5:14
**COLE (2)**
6:13,23
**COLLINS (1)**
4:15
**comfortable (1)**
12:14

**Committee (5)**
4:2,8;11:7;13:24;
14:5
**commodity (1)**
11:19
**Company (9)**
5:24;6:3;7:8;
10:15;12:17,21,24;
17:24;18:3
**compete (1)**
9:5
**component (1)**
9:21
**CONAWAY (1)**
4:23
**concedes (1)**
13:16
**concluded (1)**
19:4
**conference (1)**
11:13
**confirm (1)**
12:12
**connection (1)**
15:5
**CONNOLLY (1)**
7:2
**consensual (1)**
10:7
**Construction (1)**
15:16
**constructive (2)**
14:2,15
**consummate (2)**
9:15;10:11
**contact (1)**
18:17
**continue (3)**
10:9;15:13;18:17
**conversations (2)**
14:12,15
**Cooperative (1)**
6:8
**Cortland (2)**
4:13,19
**costs (1)**
11:25
**counting (1)**
14:16
**couple (2)**
13:4;15:4
**course (2)**
10:17;14:21
**COURT (32)**
8:2,11,14,14,18,
23,25;9:11;11:1,4,6,
10;12:3;13:9,15,22;
14:16,24;15:5,8,10,
17,22;16:7,23;17:6,
15,18;18:3,13,22;
19:1
**create (1)**
16:21

EMERALD OIL, INC., et al.
Case No. 16-10704(KG)                                                        September 30, 2016

**creates (2)**
8:20;12:23
**credit (6)**
9:2,5,6,8,22;14:13
**creditors (1)**
14:7
**Creditors' (4)**
4:2,8;11:7;13:24
**cure (1)**
17:16

**D**

**Dakota (9)**
4:24;7:13,14;9:12;
10:18;11:7;14:24,
25;16:1
**dark (1)**
18:18
**data (1)**
12:17
**date (8)**
8:3,5,6,15;11:8,10;
18:4,14
**DAVID (2)**
4:4;13:23
**day (1)**
19:2
**days (4)**
10:13;13:5;16:11;
18:8
**deadline (6)**
8:25;16:8,13,16,
22;17:2
**deadlines (3)**
15:20,25;16:3
**deal (5)**
17:9,11;18:9,9,20
**debt (1)**
14:11
**debtor (2)**
11:20;12:11
**debtors (8)**
8:9;9:6,15,23;
10:4;11:21;14:25;
18:16
**debtors' (2)**
10:4;11:14
**declared (1)**
9:8
**definitely (1)**
11:16
**definitive (2)**
11:2,4
**developed (1)**
8:25
**developments (1)**
8:15
**DIAMOND (1)**
7:7
**different (2)**
14:14;15:4
**DIP (2)**

9:21;12:7
**discuss (1)**
17:24
**discussing (2)**
9:18;12:16
**discussions (1)**
13:6
**DMS (1)**
11:24
**docket (1)**
15:1
**document (2)**
10:20;17:5
**documented (2)**
15:4,9
**documents (3)**
15:21;16:1,2
**dollars (1)**
9:4
**done (1)**
18:21
**down (2)**
10:19;18:10
**drive (1)**
10:14

**E**

**earlier (1)**
14:25
**Eastern (1)**
11:6
**ECKER (1)**
6:18
**either (1)**
9:22
**Electric (1)**
6:8
**else (2)**
12:4;15:12
**Emerald (2)**
5:13,19
**end (2)**
11:13;13:4
**ensure (1)**
12:10
**entitled (1)**
10:5
**envisioned (1)**
15:24
**ESQ (21)**
4:3,4,9,14,15,20,
25;5:4,9,14,15,20,
25;6:4,9,10,15,20,
25;7:4,9
**estate (3)**
9:14,25;13:11
**et (1)**
7:3
**everyone (5)**
8:2;12:14;13:16;
14:2;19:1
**exact (1)**

18:6
**example (1)**
16:8
**expect (1)**
13:9
**expectation (1)**
15:3
**expected (2)**
12:18;15:6
**expense (1)**
12:18
**Exploration (4)**
5:24;6:3,14,19

**F**

**face (1)**
13:17
**fact (2)**
14:13;17:12
**far (1)**
10:8
**FARBER (1)**
5:23
**feasible (1)**
9:16
**FELD (2)**
4:1;5:15
**file (1)**
16:1
**filed (6)**
10:23;14:25;
15:21;16:2,25;17:1
**filing (1)**
15:1
**fine (3)**
8:21;13:22,22
**FINGER (1)**
4:12
**first (1)**
12:16
**FISHMAN (1)**
6:2
**FMC (1)**
7:3
**focus (1)**
10:13
**form (1)**
9:20
**fortunately (1)**
11:18
**forward (2)**
9:15;11:23
**FOX (1)**
6:7
**frankly (2)**
12:19;18:8
**front (1)**
16:11
**full (1)**
16:15
**fund (2)**
9:17;14:13

**funded (2)**
9:19;10:2
**funding (2)**
9:13;10:10

**G**

**GALLAGHER (1)**
7:2
**GANDAL (1)**
6:18
**gathering (1)**
10:21
**GIBBONS (1)**
5:18
**GLANTZ (1)**
6:2
**goal (2)**
12:15;14:2
**goes (1)**
17:13
**Good (7)**
8:2,8;12:5;15:13,
22;19:1,1
**GOTSHAL (2)**
4:18;12:6
**great (2)**
13:20;18:25
**GRIFFITHS (1)**
7:4
**Gross (1)**
8:2
**guess (1)**
17:9
**GUMP (2)**
4:1;13:24

**H**

**HAMPTON (1)**
5:12
**happens (1)**
13:3
**happy (2)**
12:2;16:5
**hard (2)**
13:8;14:7
**hasty (1)**
13:2
**HAUER (1)**
4:1
**hear (1)**
12:4
**heard (3)**
12:4;17:2,14
**hearing (15)**
8:4,5,6,17;11:4,5;
13:2;15:6,13,19;
16:11,12,20;17:3,11
**heated (1)**
11:12
**HEATH (1)**
7:14

**hits (2)**
11:20,20
**Holdings (2)**
5:13,19
**Honor (19)**
8:8,12;9:10,23;
12:2,5,9;13:13,23;
14:4,4,10,23;15:15,
24;16:9;17:7;18:5;
19:3
**hope (1)**
18:22
**hopeful (1)**
17:12
**hopefully (2)**
14:14,20
**HORAN (1)**
6:4
**horse (1)**
9:4
**HYATT (1)**
5:23

**I**

**identified (3)**
12:21;14:3;16:3
**identify (1)**
9:13
**III (1)**
5:4
**important (1)**
16:12
**improved (1)**
10:12
**Inc (3)**
6:8,24;7:3
**included (1)**
15:6
**including (1)**
16:1
**information (2)**
12:17;17:10
**informed (1)**
9:4
**insignificant (1)**
11:25
**insolvency (1)**
13:12
**instead (1)**
8:7
**Insurance (1)**
7:8
**intend (1)**
8:13
**intent (1)**
15:1
**interests (1)**
18:2
**interfere (1)**
14:18
**into (3)**
9:14;13:2;15:4

Case 16-50998-KG    Doc 64    Filed 10/05/16    Page 23 of 25

EMERALD OIL, INC., et al.
Case No. 16-10704(KG)                                                    September 30, 2016

**involved (1)**
　14:11
**issue (3)**
　13:13;16:18,21
**issues (5)**
　10:24;12:16;
　16:15;17:12,16

**J**

**Jacam (1)**
　5:8
**JAMES (2)**
　5:2,7
**Joe (2)**
　12:5;16:9
**JOHN (1)**
　6:9
**JOSEPH (1)**
　4:20
**Judge (7)**
　8:2,24;10:17;
　11:12;16:24;18:6,25

**K**

**kind (7)**
　11:12,19;15:8,20,
　25;16:4;18:20
**kinds (1)**
　17:17
**knowing (1)**
　13:3
**Koch (2)**
　6:14,19
**KUNZ (12)**
　5:4;15:15,15,18,
　22;16:4,7,25;17:7,8,
　16;18:16
**Kunz's (1)**
　17:25

**L**

**LABOV (1)**
　6:10
**large (1)**
　10:13
**last (3)**
　8:25;9:11;15:2
**LAYTON (1)**
　4:12
**learning (1)**
　9:6
**left (1)**
　12:11
**lender-purchasers (1)**
　11:8
**lenders (4)**
　9:3,13;10:16;
　18:21
**letter (1)**
　15:1

**letting (1)**
　8:22
**level (1)**
　12:18
**LICHTENSTEIN (1)**
　6:20
**lien (3)**
　12:18;13:10;17:16
**lienholder (2)**
　10:3,16
**liens (1)**
　17:19
**liquidating (1)**
　9:16
**liquidity (3)**
　9:23;11:14;12:11
**list (1)**
　17:24
**litigation (1)**
　11:24
**little (1)**
　14:14
**live (1)**
　12:22
**LLC (2)**
　4:24;6:2
**LLP (11)**
　4:1,18,23;5:2,7,12,
　23;6:7,23;7:2,7
**loan (1)**
　9:21
**locked (1)**
　18:9
**long (1)**
　17:10
**look (2)**
　15:10;18:6
**looking (2)**
　16:5;17:10
**LP (1)**
　4:7

**M**

**MANGES (2)**
　4:18;12:6
**manner (1)**
　12:23
**many (1)**
　10:4
**MARK (1)**
　4:15
**Market (2)**
　4:13,19
**material (1)**
　11:19
**matter (2)**
　14:14;17:8
**matters (3)**
　8:4;14:20;17:21
**may (1)**
　8:23
**MCCARTHY (1)**

　7:7
**McKenzie (1)**
　6:8
**mean (3)**
　11:12;15:25;17:1
**means (2)**
　11:25;18:18
**meantime (2)**
　11:21;18:24
**meat (1)**
　12:8
**member (1)**
　8:19
**mentioned (1)**
　9:11
**MICHAEL (1)**
　6:20
**Midstream (5)**
　4:24;7:13,14;
　10:18;14:24
**MILLER (1)**
　5:9
**moment (2)**
　13:7;17:19
**money (1)**
　18:4
**more (3)**
　12:8;14:17;16:4
**morning (2)**
　8:8;16:14
**MORRIS (2)**
　5:2,7
**motions (1)**
　10:22
**move (2)**
　11:23;12:1
**movement (1)**
　17:21
**much (2)**
　18:19,25
**MULLIN (1)**
　5:12

**N**

**namely (1)**
　16:1
**NATASHA (1)**
　5:20
**navigate (1)**
　16:15
**need (12)**
　8:16;9:14,24;10:1,
　23;11:23,25;14:21;
　16:15;18:8,11,23
**negative (1)**
　11:24
**negotiate (1)**
　10:6
**negotiated (1)**
　13:19
**negotiating (2)**
　9:18;17:19

**negotiations (1)**
　13:6
**Nevertheless (1)**
　12:13
**New (6)**
　5:13,19;15:20,25,
　25;16:22
**next (1)**
　10:13
**NICHOLAS (1)**
　6:15
**NORMAN (1)**
　7:14
**note (1)**
　14:9
**notice (1)**
　15:1
**number (6)**
　10:3,6,10,14;
　13:17;16:1
**numbers (4)**
　12:19,22;13:5,19

**O**

**objection (4)**
　16:8,13,16;17:2
**objective (1)**
　18:19
**obligations (4)**
　9:19;10:1;12:12,
　19
**obviously (2)**
　14:3,5
**occurred (1)**
　16:13
**o'clock (1)**
　16:13
**October (5)**
　11:5,22;15:19;
　17:3;18:19
**offered (1)**
　17:9
**Official (2)**
　4:2,8
**once (1)**
　9:17
**one (3)**
　15:13;16:10,19
**ongoing (1)**
　12:25
**onion (1)**
　12:20
**only (2)**
　9:1;14:9
**opportunity (2)**
　17:11,14
**optimal (1)**
　12:23
**order (1)**
　13:5
**orders (2)**
　10:22;15:4

**others (1)**
　12:21
**out (8)**
　11:12;14:24;
　16:18,20;17:1,12,13,
　25
**outcome (1)**
　12:23
**over (3)**
　10:13;11:5;17:19
**overbid (1)**
　9:5
**overstated (1)**
　10:5

**P**

**PA (2)**
　4:12;6:18
**paid (1)**
　13:10
**part (1)**
　15:6
**particular (1)**
　16:3
**parties (5)**
　8:5,14;15:3,7;
　17:19
**passed (1)**
　16:17
**past (3)**
　9:1;10:8;11:15
**path (1)**
　12:22
**PAUL (1)**
　6:10
**payment (1)**
　14:6
**PC (2)**
　5:18;6:13
**peeling (1)**
　12:20
**pending (1)**
　10:22
**pens (1)**
　10:19
**petition (1)**
　12:7
**phone (1)**
　18:24
**picked (1)**
　10:19
**place (1)**
　15:20
**plan (3)**
　9:16;12:13;14:13
**pm (2)**
　11:5;19:4
**point (4)**
　12:14;14:24;
　16:19;18:6
**PORDY (1)**
　6:18

Case 16-50998-KG   Doc 64   Filed 10/05/16   Page 24 of 25

EMERALD OIL, INC., et al.
Case No. 16-10704(KG)                                                                 September 30, 2016

**position (4)**
8:16;11:14,22;
18:12
**pre- (1)**
12:6
**pre-petition (1)**
9:3
**PRESENT (2)**
7:12;10:24
**presentation (2)**
12:1,9
**press (1)**
8:19
**PRESTON (1)**
4:7
**pretty (1)**
10:8
**price (1)**
9:22
**prices (1)**
11:19
**prior (1)**
9:19
**priority (3)**
9:24;10:5;18:19
**probably (1)**
15:4
**problem (1)**
8:20
**proceed (2)**
8:23;14:19
**proceedings (2)**
13:18;19:4
**process (4)**
8:15;9:1;14:18;
15:8
**projections (2)**
11:17,17
**provide (1)**
8:14
**provided (1)**
12:17
**providing (1)**
9:22
**prudent (1)**
13:4
**purchase (1)**
9:22
**purchaser (3)**
10:2;12:10;14:12
**purchaser-lenders (2)**
9:17;10:11
**purposes (1)**
16:19
**put (3)**
10:19;12:8;15:1

**Q**

**quick (1)**
15:18
**quickly (2)**
11:23;12:1

**quite (1)**
18:8

**R**

**rate (1)**
10:9
**rather (3)**
13:2,18;16:11
**rationalize (1)**
9:13
**rationalized (1)**
10:2
**reach (3)**
16:18;17:25;18:20
**real (1)**
17:21
**realistic (1)**
18:4
**really (1)**
18:7
**reason (1)**
13:1
**reasonable (1)**
10:15
**reasons (2)**
10:6;16:10
**recall (1)**
10:17
**received (1)**
9:2
**record (1)**
15:3
**reduce (1)**
10:9
**referred (1)**
13:6
**refine (2)**
9:13;13:5
**regarding (1)**
14:6
**releases (1)**
15:7
**removed (1)**
9:25
**request (2)**
8:13;11:4
**requirement (1)**
12:10
**requirements (2)**
9:14;10:10
**requires (1)**
10:25
**reservation (1)**
16:25
**resolutions (1)**
10:7
**resolved (1)**
14:20
**respect (3)**
10:22;15:2;18:15
**result (4)**
9:10;13:1,8;14:8

**results (1)**
13:11
**revenue-generating (1)**
9:25
**reviewed (1)**
17:5
**REYNOLDS (1)**
7:13
**RICHARDS (1)**
4:12
**RICHTER (1)**
5:12
**right (13)**
8:23;11:10,13;
13:9,15;15:12,13;
17:6,22,25;18:13,22;
19:1
**rights (1)**
16:25
**right-size (1)**
13:19
**ROGERS (1)**
6:18
**ROSEN (1)**
7:9
**ROTHSCHILD (1)**
6:7
**round (1)**
11:11
**rounds (1)**
12:1
**running (1)**
18:3
**Ryan (3)**
8:8;16:24;18:5

**S**

**sale (17)**
8:15,17;9:1,8,9,15;
10:12;11:2,4;12:23;
13:2,3,11;15:6;17:9,
18;18:21
**SAMIS (1)**
4:9
**SARAH (1)**
4:3
**satisfied (1)**
9:24
**schedule (1)**
14:19
**scheduled (2)**
9:7;17:23
**scheduling (1)**
11:13
**SCHOTZ (1)**
6:13
**SCHRECK (1)**
5:23
**SCHULTZ (1)**
4:3
**secured (2)**
9:3,23

**September (1)**
11:15
**Services (2)**
4:13,19
**set (2)**
12:22;15:20
**setting (1)**
16:22
**settled (1)**
10:18
**settlement (7)**
9:12;13:20;14:5;
15:2,7,9;16:2
**SHAPIRO (1)**
4:14
**SHAW (1)**
6:2
**shell (1)**
12:11
**SHEPPARD (1)**
5:12
**short (3)**
8:13;16:10;18:3
**SHULMAN (1)**
6:18
**sic (1)**
16:5
**sideways (1)**
17:14
**slate (1)**
16:15
**SMOLINSKY (14)**
4:20;12:5,6;13:13,
16;14:1,3,10;16:9,9;
17:4,22,23;18:16
**Smolinsky's (1)**
14:6
**someone (1)**
16:18
**SONGONUGA (1)**
5:20
**sorry (2)**
11:3;15:15
**speak (2)**
8:13;17:11
**specifics (1)**
16:4
**spoke (2)**
8:25;9:11
**stalking (1)**
9:4
**standpoint (1)**
18:12
**STARGATT (1)**
4:23
**started (2)**
12:16,20
**startling (1)**
12:20
**Stawson (2)**
5:24;6:3
**STEPHEN (1)**
5:9

**STEVEN (1)**
5:25
**still (1)**
11:23
**STRAUSS (1)**
4:1
**strongly (1)**
16:16
**stuff (1)**
17:17
**submitted (2)**
10:23;15:5
**substantially (1)**
10:12
**success (1)**
10:9
**successful (2)**
9:8;10:8
**sufficient (1)**
12:11
**Sunday (1)**
17:24
**sure (2)**
16:14;18:1
**swords (1)**
10:19

**T**

**table (1)**
17:19
**talk (1)**
16:5
**talking (2)**
11:14;18:10
**TAYLOR (2)**
4:7,23
**Technologies (2)**
6:24;7:3
**TED (1)**
5:14
**teleconference (1)**
8:6
**telephone (2)**
8:3;14:22
**TELEPHONICALLY (1)**
7:12
**telling (1)**
15:11
**ten (1)**
10:13
**tentative (1)**
10:18
**terms (5)**
8:24;11:2,3,25;
15:18
**Thanks (1)**
8:9
**thin (2)**
11:21;18:11
**THOMAS (1)**
6:4
**thought (1)**

13:4
**thoughts (1)**
    15:23
**tight (1)**
    18:7
**timing (1)**
    15:19
**TIMOTHY (1)**
    7:13
**today (3)**
    8:10;13:3;16:20
**together (1)**
    12:21
**towards (1)**
    14:2
**TOWBIN (1)**
    6:2
**treatment (1)**
    10:5
**Trucking (1)**
    5:3
**trust (1)**
    18:13
**try (2)**
    13:8;18:20
**trying (4)**
    10:14,20;13:21;
    17:8
**Tuesday (1)**
    9:1
**two (1)**
    16:11
**two-million-dollar (1)**
    14:6

**U**

**uncertain (2)**
    12:25;13:7
**under (2)**
    9:21;15:9
**UNISON (1)**
    19:3
**unsecured (2)**
    11:7;14:7
**up (4)**
    10:19,23;12:1;
    17:9
**update (1)**
    8:15
**upon (2)**
    9:6;14:15
**uptick (1)**
    11:18
**use (1)**
    9:23

**V**

**valid (1)**
    13:17
**validity (1)**
    13:14

**valuable (1)**
    9:25
**various (6)**
    8:4,14;9:13;10:3,
    22;15:7
**vendors (1)**
    10:4
**view (1)**
    16:16

**W**

**wants (4)**
    16:4,5,7;17:2
**way (2)**
    14:18;18:10
**Wednesday (1)**
    14:25
**week (3)**
    10:8;14:25;15:2
**weekend (1)**
    19:1
**WEIL (2)**
    4:18;12:6
**weren't (1)**
    11:15
**what's (1)**
    16:10
**Whereupon (1)**
    19:4
**WHITEFORD (1)**
    4:7
**whole (1)**
    16:19
**WILLIAM (1)**
    6:25
**winning (1)**
    9:9
**wished (1)**
    12:4
**without (1)**
    13:3
**work (6)**
    12:25;13:5;15:14,
    21;17:12;18:20
**workable (1)**
    18:20
**worked (2)**
    11:6;17:13
**working (4)**
    9:12;13:8;14:2,7
**works (2)**
    10:15;11:8
**wrapped (1)**
    10:23

**Y**

**yesterday (1)**
    9:7
**YOUNG (1)**
    4:23

**Z**

**ZACHARY (1)**
    4:14

**1**

**10 (1)**
    16:13
**11 (1)**
    12:13
**110,500,000 (1)**
    9:4
**11th (8)**
    11:5,22;14:20;
    15:14;17:3;18:4,19,
    23
**12:30 (2)**
    11:5;14:20

**2**

**2:18 (1)**
    19:4
**20013 (1)**
    5:8

**3**

**30th (1)**
    11:15
**363 (1)**
    9:1